IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

_____

UNITED STATES OF AMERICA,

                      CAUSE NO. CR 06-26-BU-DWM

           Plaintiff,

    vs.

                      FINDINGS AND RECOMMENDATION
                      OF UNITED STATES
                      MAGISTRATE JUDGE

PHILIP DOMENICO,

           Defendant.

_____

The Government has charged Defendant Philip Domenico by
superseding indictment with three counts of being a felon in
possession of firearms in violation of 18 U.S.C. § 922(g)(1).
With regard to what is now Count II, Defendant has moved to
suppress evidence of the firearms found in his home on the basis
that they were the fruit of an illegal interrogation.  Chief
Judge Donald W. Molloy has referred the motion to suppress to the
undersigned for initial determination.  Pursuant to this
referral, the undersigned held a suppression hearing on March 2,
2007.  Based on the evidence and testimony presented at the
suppression hearing,

    **IT IS RECOMMENDED** that Defendant's Motion to Suppress (dkt

PAGE 1

#7) be **DENIED.**

   **NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel on or before March 8, 2007, at 12:00 noon.[1]

   DONE and DATED this 6th day of March, 2007

                          /s/ Jeremiah C. Lynch
                          Jeremiah C. Lynch
                          United States Magistrate Judge

## Discussion

### I.  Factual Background

   The Court makes the following factual findings based on the evidence and testimony presented at the suppression hearing. In April 2005, Defendant Philip Domenico was a felon under the supervision of Montana Probation and Parole Officer Chuck Juhnke. As a condition of his state felony probation, Domenico was prohibited from possessing firearms.  He was also prohibited from drinking alcohol or entering any place where intoxicants are the chief item of sale.

   On April 3, 2005, Officer Juhnke received a call from Domenico's longtime live-in girlfriend, Nita Davis, who stated

----

   [1] *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full ten day period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

PAGE 2

that Domenico was drinking alcohol at his residence.  Officer
Juhnke and Probation Officer Chris Evans responded to the
residence and conducted a probation search.  In addition to
evidence of alcohol, the officers found evidence that would
suggest the presence of firearms in the house, including
ammunition, duck decoys, and gun scabbards.  They did not,
however, find any actual firearms at that time.

An informant called Officer Juhnke on April 5, 2005, and
reported that Domenico was drinking at a bar in Belgrade.
Officer Juhnke responded to the location, arrested Domenico, and
transported him to the Gallatin County Detention Center where he
was subsequently detained.  According to Officer Juhnke, Davis
called him later that evening and told him that Domenico's guns
were in an unfinished room in the basement of his residence,
hidden behind the insulation and between the studs.

Davis testified differently.  She claimed she simply told
Officer Juhnke that Domenico's guns were "under the stairs" and
in the "mechanical room."  Davis testified that she could not
have provided Officer Juhnke with their exact location because
she did not know they were hidden behind the insulation.

As a result of Davis's phone call, Officer Juhnke enlisted
Officer Evans on the morning of April 6, 2005, to assist him in
conducting another search of Domenico's residence.  According to
Officer Evans, Officer Juhnke told him they were returning to the
house to search for firearms, which he expected to find in a room

PAGE 3

in the basement.  Officer Juhnke described Davis's call from the evening before, and explained that she told him the firearms were located in an unfinished room in the basement behind some insulation and between the studs.

Officers Juhnke and Evans then drove to the Gallatin County Detention Center for purposes of meeting with Domenico to advise him of the impending search.  Officer Evans remained in the intake room while Officer Juhnke spoke with Domenico and explained the information he had received regarding the firearms. Officer Juhnke also asked Domenico how to get inside the house. Domenico confirmed the location of the firearms,[2] and said his sister would let the officers into the house.

Officers Juhnke and Evans proceeded to Domenico's residence, where Domenico's sister indeed met them and let them inside.  The officers went into the only unfinished room in the basement, and found several firearms behind the insulation and between the studs.

## II.  **Analysis**

Domenico has moved to suppress the firearms found in his basement as fruits of the poisonous tree.  He claims that Davis did not accurately or specifically describe the location of the firearms, and argues the officers would not have found them but

---

[2] Chief Judge Donald W. Molloy has suppressed Domenico's statements to Officer Juhnke on the basis that they were obtained in violation of *Miranda v. Arizona*, 384. U.S. 436 (1966).

for his description of their location during the illegal interrogation.

The Government, in contrast, contends that the officers found the firearms just where Davis said they would be – behind the insulation and between the studs in the unfinished room in the basement.  Because the officers would have found the firearms regardless of Domenico's statements to Officer Juhnke at the jail, the Government argues the firearms are admissible under the inevitable discovery doctrine.  This Court agrees.

Under "the 'inevitable discovery' exception to the fruit-of-the-poisonous-tree doctrine,...evidence that is illegally obtained is nonetheless admissible if it 'would inevitably have been discovered through lawful means.'" *United States v. Pulliam*, 405 F.3d 7782, 790-91 (9th Cir. 2005)(*quoting United States v. Ramirez-Sandoval,* 8872 F.2d 1392, 1396 (9th Cir. 1989).  The Government bears the burden of proving "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means."  *Nix v. Williams*, 467 U.S. 431, 444 (1984).  *See also*, *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000).

This Court is convinced based on the evidence and testimony presented at the suppression hearing that Officers Juhnke and Evans inevitably would have discovered the firearms in Domenico's residence, regardless of Domenico's statements to Officer Juhnke

at the detention center just prior to their search.  Simply put,
this Court finds Officer Juhnke's testimony as to the information
Davis provided him regarding the location of the guns credible.
According to Officer Juhnke, Davis called him on the telephone
late in the evening of April 5, 2005, and stated that Domenico's
guns were located in an unfinished room in the basement, behind
some insulation and between the studs.  Officer Evans
corroborated that testimony, explaining that when Officer Juhnke
asked him to assist with the search the next day, he recounted
Davis's phone call from the night before.  Based on the
information Davis had provided, Officer Juhnke told Officer Evans
that he expected to find Domenico's firearms in an unfinished
room in the basement behind some insulation and between the
studs.

        Officer Juhnke had already made the decision to search
Domenico's residence for the firearms when he visited with
Domenico at the Gallatin County Detention Center.  He and Officer
Evans were in fact on their way to conduct the search, stopping
on the way to advise Domenico of their plan and to ask him how
best to gain entry to the residence.  The officers found the
firearms precisely where Davis said they would be - behind
insulation and between the studs in an unfinished room in the
basement.  Based on the foregoing credible testimony, this Court
concludes the Government has met its burden of establishing by a

PAGE 6

preponderance of the evidence that the officers inevitably would have found the firearms, regardless of Domenico's illegally obtained statements.  Evidence of the firearms is thus admissible under the inevitable discovery doctrine, and Domenico's motion to suppress should be denied.

In so concluding, this Court has accepted the credible testimony of Officers Juhnke and Evans over Davis's contradictory testimony.  Even if this Court were to accept Davis's testimony in its entirety, however, Domenico's motion to suppress would nevertheless fail.  Davis agreed that she spoke with Officer Juhnke about the location of Domenico's firearms, but denied telling him they were located behind insulation and between the studs in an unfinished room in the basement.  She instead testified somewhat confusingly that she told him they were "under the stairs" in the "mechanical room," which she conceded is in the basement.  Although the officers found the firearms in this so-called "mechanical room," it is Domenico's position that the officers would not have found the weapons without the information he provided at the jail.  Domenico argues the weapons were not found "under the stairs," and claims the officers would not have known to look, or even been entitled to look, behind the insulation when conducting their search.

Davis agrees that she told Officer Juhnke that Domenico had firearms in the house, disputing only the specifics she provided

PAGE 7

as to their location.  The mere fact that Davis told Officer Juhnke there were firearms in the house, coupled with the ammunition and gun scabbards found in the first search, was sufficient to give the officer a reasonable suspicion that Domenico possessed firearms, thereby justifying a warrantless search of the residence.  *See, United States v. Knights*, 534 U.S. 112, 121 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

As Domenico's common-law wife, Davis had provided an accurate tip just two days earlier regarding his consumption of alcohol in the home.  Davis's tip regarding the presence of firearms thus provided sufficient indicia of reliability to support a reasonable suspicion justifying a search of Domenico's entire residence for firearms, not just a specific location in the basement.  This is so particularly in light of the evidence Officer Juhnke found during his initial search that was consistent with the presence of firearms in the home.  *See, Griffin v. Wisconsin*, 483 U.S. 868, 871 (1987) (probation officer had reasonable suspicion to search defendant's apartment based on a tip that "there were or might be guns in [the probationer's] apartment.").

PAGE 8

Even taking Davis's testimony as true, Domenico's motion to suppress should be denied on the alternate basis that Officer Juhnke had reasonable suspicion to suspect that he had firearms in the house, thereby justifying a search of the entire residence.